## Julia Shaughnessy, Appellant, v. William Rothmann et al., Appellees.

### Gen. No. 20,843. (Not to be reported in full.)

Appeal from the Superior Court of Cook county; the Hon. CHARLES M. FOELL, Judge, presiding. Heard in this court at the October term, 1914. Affirmed. Opinion filed October 5, 1915. Rehearing denied October 13, 1915. *Certiorari* denied by Supreme Court (making opinion final).

### Statement of the Case.

Bill by Julia Shaughnessy against William Rothmann and others, in the Superior Court of Cook county, to compel the release of a trust deed on premises belonging to complainant, on payment of the amount alleged to be unpaid on the mortgage debt, and cross-bill by Louise C. Zweifel, the owner and holder of the notes and trust deed, for a foreclosure of the trust deed. From a decree dismissing the bill for want of equity, and from a decree in favor of the cross-complainant ordering a sale of the property, and from a finding in favor of the latter that there was due her, for principal, interest, expenses and fees the sum of $1,666.88, complainant appeals.

The controverted point in the case is the difference of $1,000 in the respective claims of parties as to the amount paid on the notes. The facts were, substantially, that complainant purchased the land in question through the office of Watson & Bartlett, real estate dealers in Chicago. She later applied to them for a loan with which to build, and through one Arthur Luehr, a clerk in the office, complainant received a loan of $1,700. A principal note for that amount, dated May 24, 1904, due in five years, together with ten interest notes or coupons, were signed, providing that interest should be paid at such place as the legal holder might from time to time appoint, otherwise at

the office of Watson & Bartlett. All notes were made payable to the order of "myself," and indorsed in blank. The trust deed in question was executed and delivered, which after reciting the facts, conveyed the real estate therein described to Oliver L. Watson as trustee, to secure the indebtedness. Said Luehr was named as successor in trust.

Said Luehr paid out the money as the work progressed, the last payment being about August 1, 1904. Prior to the last payment, Luehr left the office, and complainant followed him to a new office in Chicago, and transacted business with him in regard to the loan. It did not appear who was the lender of the money, though Watson testified that in making the loan, his firm loaned the money of his client. He further testified that though during the whole of the time in question, he was doing business in Chicago, and was accessible, complainant never made any effort to pay money to him as trustee.

On or about July 11, 1904, Luehr transferred the notes, trust deed and an insurance policy to defendant Zweifel, through her attorney, defendant Rothmann, for $1,700 and accrued interest. Defendant Zweifel resided in Wisconsin, where defendant Rothmann forwarded her the papers. Complainant paid the amount of the interest notes to Luehr, who remitted it to Rothmann, whose client sent him the notes for collection. Rothmann testified that such notes were always retained by him until the receipt of the money from Luehr.

In pursuance of a notice from Luehr, dated April 29, 1909, that the principal note, of $1,700 and interest, would be payable at his office May 24th, complainant called on him on that date and paid him $1,400 on account of the principal note, together with the amount of the interest note then due. As neither interest or principal notes were in Luehr's possession, no indorsement of the payments were made on them.

When complainant paid Luehr the $1,400, he gave her a receipt for the amount, stating that the payment was to apply on the principal note due May 24, 1909, with a receipt for the amount of the interest note, and prepared an agreement purporting to extend for two years the time of payment of the unpaid balance of the principal note. The agreement recited that defendant Rothmann was the owner and holder of the notes and trust deed described, and the agreement was executed by complainant and purported to be executed by "William Rothmann by Arthur Luehr, his agent." Luehr had no authority from either defendants Rothmann or Zweifel to execute the agreement, of which neither had knowledge until it was offered in evidence at the trial.

About the time of this agreement, Luehr asked defendant Rothmann to consent to wait for the principal sum until complainant received money with which she expected to take up the note, and which she expected to have shortly, and until such payment, she would pay seven per cent. on the note. Defendant Rothmann was informed that complainant did not wish an extension for a definite time, and consented to what was asked. About a year later, Luehr informed defendant Rothmann that $400 had been paid by complainant on the principal note, but as she had not then received the money she expected, she asked another indefinite extension until she should receive it, and that defendant Rothmann would accept six per cent. until the balance was paid. Defendant Rothmann assented, and Luehr paid him $400 and interest.

About May 24, 1911, Luehr informed defendant Rothmann that complainant desired an extension of the time of payment on the balance of the principal note for two or three years, which was agreed to, and Luehr prepared in duplicate, agreements which recited the facts as to the original transaction, and the fact that the principal note had matured, the payment

of $400 on account of it, and the fact that complainant desired the extension.   The agreement then extended the time of payment of the balance of the note to May 24, 1914, with interest at six per cent. as evidenced by six interest notes of even date for $39 each. This agreement was executed by both complainant and defendant Zweifel.

Complainant received a letter from defendant Rothmann dated October 10, 1911, notifying her that thereafter all payments were to be made on the notes to him, at his office, as the representative of the holder, to which complainant did not reply until seven months later, having consulted Luehr meantime, who advised her to ignore the notice and continue to pay interest to him, which she did.

Defendant Rothmann testified that he first heard of complainant's claim to have paid Luehr more than $400 when complainant called on him in response to a letter dated June 4, 1912.

Luehr was joined as a defendant in the bill, but was not served, as he had apparently left Chicago, and before the trial commenced the bill was dismissed as to him.

JULIUS LIMBACH, for appellant; GEORGE F. ORT, of counsel.

WEST & ECKHART, for appellees.

MR. PRESIDING JUSTICE McSURELY delivered the opinion of the court.

### Abstract of the Decision.

1. BILLS AND NOTES, § 293*—*when maker put on notice as to ownership.* An agreement executed by the maker of notes, purporting to extend the time of payment after the maturity of the notes, which sets out the name of the owner thereof as being other than a person to whom the maker has made payment on account of

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

the notes, is sufficient to put such maker on notice that the person to whom she made such payments is not the owner of the notes, and that such payments to him are at her own risk, even though the agreement does not correctly state the name of the real owner.

2. BILLS AND NOTES, § 293*—*when payment not binding on holder*. Payments on the principal of a note secured by trust deed, to the person named therein as successor in trust, who did not have possession of the notes, and whose office was not the place of payment fixed in the trust deed, *held* not binding upon the owner of the notes where such person failed to turn over the sum so paid, although previous interest payments made to him had been turned over to the owner through his attorney, especially where, after making the payment, an extension agreement was signed by the parties acknowledging that a sum was due in excess of the amount which would be due if the payment so made had been deducted, and the interest notes made at the same time called for an amount which showed that interest was being charged on such excess.